Tomasson v. State.

## TOMASSON *v.* STATE.

'(*Nashville.* December Term, 1903.)'

1. **JUROR.** No right of challenge "propter defectum" after the jury is sworn.

    It is well-settled law in this State that after a jury has been sworn it is too late to challenge any of its members *"propter defectum,"* but a different rule prevails at least in favor of the defendant where a juror is disqualified by reason of having prejudged the case. (*Post, pp.* 599-601).

    Cases cited and approved: Ward v. State, 1 Hum., 253; Cartwright v. State, 12 Lea, 620, 628.

2. **CRIMINAL LAW.** A jury is "charged" with the fate of a prisoner, when.

    It is settled law in this State that a jury is "charged" with the fate of a prisoner when he is placed in the hands of the jury for trial, that is, when the jury is sworn to try the issue upon the indictment and the plea of the prisoner. (*Post, pp.* 600-601.)

    Cases cited and approved: Ward v. State, 1 Hum., 253; State v. Connor, 5 Cold., 315.

3. **SAME.** Same. Effect of discharge of jurors after they are sworn. Former jeopardy.

    In a criminal case, when a jury is charged with the fate of a prisoner, as defined in the last preceding headnote, he is in jeopardy. Therefore, where a jury has been impaneled and sworn, neither the State nor the court has the right, over the objection of defendant, to remove from the jury any of the members thereof because of any disqualification *"propter defectum,"* and if this is done the defendant is entitled to interpose a plea of former jeopardy, and to a discharge thereon. (*Post, pp.* 601-602.)

Tomasson v. State.

Cases cited and approved: Ward v. State, 1 Hum., 253; Mahala v. State, 10 Yerg., 532; State v. Brooks, 3 Hum., 10; Elijah v. State, 1 Hum., 103.

4. **SAME.** Same. **Right to plead former jeopardy not waived by defendant, when.**

Where the defendant objected to the discharge of two jurors after the jury had been sworn, and, pleading his former jeopardy, moved his release he did not waive his rights thereunder, or consent to the discharge of said jurors by asking, after his objection and motion had been overruled, for a new venire, nor by failing to object subsequently to the new jurors chosen in the place of those rejected. (*Post, pp.* 600-601.)

FROM MONTGOMERY.

Appeal from the Criminal Court of Montgomery County.—T. F. MARTIN, Special Judge.

GHOLSON & LYLE, DANIEL & DANIEL, W. M. BRANDON, A. S. CALDWELL and MATT. G. LYLE, for Tomasson.

ATTORNEY-GENERAL CATES, for the State.

MR. JUSTICE WILKES delivered the opinion of the Court.

The defendant was indicted for murder. Upon the trial the jury found him guilty of involuntary manslaughter, and he was sentenced to one hour in the county jail and to pay the costs of prosecution.

This was all prior to the last term of this court, and
to that term the defendant prayed an appeal, which
was dismissed because no judgment had been rendered
in the court below upon the verdict of the jury.    The
order of this court was that the cause be remanded to
the lower court, in order that judgment might be ren-
dered on the verdict; and this was done, and defendant
has again appealed.   Defendant insists that such irreg-
ularities occurred in the proceedings in the court below
in impaneling the jury that he is entitled to a reversal
of the judgment, and to be discharged.

It appears that a jury was selected, impaneled, and
sworn.   They took their seats in the jury box.   The de-
fendant was arraigned, and both the State and defend-
ant announced ready for trial.    Thereupon the court
adjourned for dinner.

After dinner the trial judge, upon his own motion,
called up two of the jurors who had been selected, im-
paneled, and sworn, and after asking them some ques-
tions, discharged them from the jury—one because of
relationship to the defendant, and the other because he
had not been a resident of the county for a time suffi-
cient to render him competent to sit as a juror.

The defendant objected to the discharge of the jurors,
and protested against the formation of a new jury by
supplying their places.

The trial judge overruled the objection, and directed
the clerk to place in the hat the names of five members
of the regular venire, who had not answered to their

Tomasson v. State.

names on the original call. The defendant, still pro-
testing upon being forced to go further into the trial,
insisted that, if it was proceeded with, he should have a
new venire, and it was thereupon ordered by the court
after the five names had been exhausted.

The names of the new venire, fifteen in number, were
then placed in the hat, and from this number two jurors
were selected instead of the two who had been dis-
charged. Defendant, while objecting to going further
into the trial, made no specific objection to the two
jurors selected. He moved for his discharge, and filed
his plea or motion of "once in jeopardy," all of which
the trial judge overruled, and required him to go to
trial, with the result as stated.

This action of the court is assigned as error, and it
is insisted that defendant is entitled to his discharge.
He also says that he is not guilty, but acted strictly in
self-defense. The verdict of the jury in the case is pe-
culiar and inconsistent, and defendant does not object
materially to the feature of imprisonment, but objects
to being taxed with the costs, which amount to several
hundred dollars. It is this cost incurred in the trial,
rather than the sentence of confinement, that is com-
plained of.

The question presented is, has the defendant been
placed twice in jeopardy by the proceedings in the court
below?

In *Mahala* v. *The State*, 10 Yerg., 532, 31 Am. Dec.,
591, it is held that a jury in a criminal case cannot be

discharged without the consent of the prisoner, unless there is an actual necessity therefor, and any discharge, except for necessity, without the prisoner's consent, will operate to discharge him.

It is further held that the cases of necessity which will authorize such discharge are, first, when the court is compelled by law to be adjourned before the jury can agree on a verdict; second, when the prisoner, by his own misconduct, places it out of the power of the jury to investigate his case correctly, or is by the visitation of providence prevented from being able to attend his trial; and, third, when there is no possibility for the jury to agree upon and return a verdict.

In *Ward* v. *State,* 1 Hum., 253, it was held that after a jury had been sworn it was too late to challenge any of its members *"propter defectum,"* and therefore, if the court permit the district attorney-general, not only after the jury has been sworn, but also charged with the fate of the prisoner to set them, or a part of them, aside against the prisoner's consent, and compel him to select others, and a verdict is rendered against him, the prisoner is entitled to his discharge.    In this case the court defines what is meant by "charged," to wit, that it means when the prisoner has been placed in the hands of the jury for trial, which occurs when the jury is sworn, and before indictment read or testimony heard, and not necessarily after the testimony in the case is heard or the law charged.    In accord with this case is the latter case of *The State* v. *Wm. Connor,* 5

Cold., 315, where the doctrine is stated in these words: "When the jury has once been impaneled and charged with the trial of the prisoner, the discharge of the jury, unless by the consent of the prisoner, or in case of legal necessity, will operate as an acquittal, and prevent his being again put on trial."

And again: After the jury is elected and sworn, and thereby becomes a part of the tribunal sitting for the prisoner's trial, and all the preliminary things are ready for the trial, he has then reached the jeopardy from the repetition of which our constitutional rule protects him. The jury is then charged with his deliverance, and his life undoubtedly, in capital cases, is in jeopardy during their deliberations.

The jurors in this case were discharged for reasons *"propter defectum,"* and not because they had prejudged the case. This distinction is explained in *Cartwright* v. *State,* 12 Lea, 620, and a different rule prevails at least in favor of the defendant in the two classes of objections.

In accord with this case and the cases of *Ward* v. *State,* 1 Hum., 253, and *Mahala* v. *State,* 10 Yerg., 532, 31 Am. Dec., 591, see *State* v. *Brooks,* 3 Hum., 70; *Elijah* v. *State,* 1 Hum., 103.

It is said in this case that the defendant waived his rights by not objecting specifically to .the jurors which were chosen in place of those rejected, and by himself calling for a new venire.

We understand from the record that defendant properly objected to discharging the two jurors and to filling their places with others; that he moved for his release, and pleaded his former jeopardy; and the fact that he desired and asked for a special venire, and made his selection from it, rather than fill up the jury from the regular panel, should not be treated as a waiver of his rights, nor as consenting to the discharge of the jurors originally, or to a trial before the jury as finally made up. He was in the attitude of protesting and objecting all the while and his waiver and consent only went to the extent of selecting the best material he could get under the circumstances.

We are of opinion defendant was in jeopardy, and is entitled to his discharge, and the costs should be re-taxed against the State, except so far as heretofore adjudged.